UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>   Petitioner,<br><br>   v.<br><br>R. CASTRO,<br><br>   Respondent. | Case No.  2:21-CV-01040-TLN-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, Respondent's motion to dismiss, ECF No. 12, and Petitioner's traverse, ECF No. 13.

**I. BACKGROUND**

**A. Facts**

The state trial court recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Petitioner is currently incarcerated at the California Men's Colony in San Luis Obispo County.  In 1986 petitioner was convicted of three counts of rape with the use of force or fear (former Pen. Code § 261.2), one count of sexual battery (§ 243.4), one count of vehicle theft (Veh. Code, § 10851 and one count of kidnapping for robbery (§ 209, subd. (b)).  Petitioner was sentenced to an aggregate term of 28 years 8 months to life.
> In 2011, petitioner had his first parole eligibility hearing.  Due to

1

> a myriad of discipline actions, lack of insight and remorse, and inadequate parole plans, the Board of Parole Hearings ("Board") denied the request due to the numerous disciplinary actions against petitioner since the 2011 hearing.
>
> Petitioner maintains he was 24 years old at the time of the offense. . . .

ECF No. 1 at 75.

### B. Procedural History

#### 1. State Court Determination

The latest reasoned decision on the merits is from the California Superior Court. See ECF No. 1 at 74-79. Petitioner raised two claims, first that he was not given a Youth Offender Parole Hearing ("YOPH") to which he was entitled, and second that his 34 years of incarceration for a non-homicide offense violates the Eighth Amendment's bar of cruel and unusual punishment. ECF No. 1 at 75. The trial court denied both claims.

The first claim was denied because the trial court found that Petitioner was not entitled to a YOPH. Id. at 76. The YOPH program was created by California Penal Code section 3051, enacted in 2014, which established "a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity . . . ." Id. (citing Stats. 2013, ch. 312, § 1.) Originally targeted at offenders 18 years and younger, expansions to the program have extended the benefits to those 25 years and younger at the time of the controlling offense. Id. However, this procedural mechanism is not available to "those that have already been paroled or otherwise had a meaningful opportunity to obtain parole." Id. (citing In re Howerton (2020) 44 Cal.App.5th 875, 881; In re Brownlee (2020) 50 Cal.App.720, 725 ("if a prisoner's first parole hearing is not a youth offender parole hearing, then the prisoner does not receive a youth offender parole hearing"); § 3051(a)(2)(C) ("youth offenders are entitled to their initial youth offender parole hearing… unless previously released or entitled to an earlier parole consideration hearing pursuant to any other law." (emphasis added.)) Because Petitioner previously received a parole hearing in 2011 and in 2017, the superior court denied his claim.

Petitioner's second claim was that his sentence is disproportionate to his

1  culpability in violation of the Eight Amendment.  At the time, Petitioner had served 34 years of
2  his 28 year and 8 months to life sentence.  Id. at 77.  In evaluating his claim, the trial court
3  compared Petitioner's situation with the facts of In re Palmer (2019) 33 Cal.App.5th 1199, 1202,
4  a case the court describes as providing an example of what facts are needed for the court to
5  conclude a sentence is disproportionate.  Id.  In Palmer, the 17-year-old petitioner pled guilty to
6  kidnapping for robbery and was sentenced to life without the possibility of parole, of which he
7  served 30 years in prison.  The court concluded "that in light of the petitioner's age at the time of
8  the offense and attendant diminishment of his culpability, and the facts that he attempted to
9  minimize the danger he posed by using an unloaded weapon and did not physically injure his
10 victim, his continued incarceration has become so disproportionate to his individual culpability as
11 to be 'constitutionally excessive.'"  Id. at 1214.
12          The trial court distinguished the facts of Palmer from Petitioner's case by noting
13 that 24-year-old Petitioner's sentence was based on six separate crimes, including three counts of
14 rape with the use of force or fear and a kidnapping for robbery, whereas the petitioner in Palmer
15 was convicted of a single offense which did not involve any violence or result in injury.  See ECF
16 No. 1 at 78.  Finally, the trial court referenced the significant amount of information involving the
17 petitioner's socio-economic background the court in Palmer used to make its decision, whereas
18 Petitioner did not provide enough information.  Id.  Petitioner did provide some information, but
19 the information was "insufficient for the Court to understand circumstances of the offense,
20 including its motive, the extent of the petitioner's involvement in the crime, the manner in which
21 the crime was committed, and the consequences of petitioner's acts."  Id.  The trial court
22 concluded that petitioner's sentence is not disproportionate to his culpability for three rapes, a
23 sexual battery, and a kidnapping for robbery.  Id. (citing Ewing v. California (2003) 538 U.S. 11
24 (upholding 25-year-to-life sentence for grand theft with priors); Lockyer v. Andrade (2003) 538
25 U.S. 63 (upholding a 50-year-to-life sentence for petty theft with priors)).
26          Following the denial by the trial court, Petitioner filed a writ of habeas corpus in
27 the California Supreme Court.  ECF No. 1 at 4.  The California Supreme Court denied the petition
28 for failure to include copies of reasonably available documentary evidence, citing to People v.

Duvall (1995) 9 Cal.4th 464, 474.  Id. at 74.

### 2. Federal Court

The instant petition, filed on June 14, 2021, sets forth two claims for relief.  See ECF No. 1, see also ECF No. 13 at 3, 5.  The petition was not clear as to the number of claims asserted.  See ECF No. 1.  In his traverse, filed on January 18, 2022, Petitioner clarified that he is asserting only two claims: (1) the California Supreme Court improperly denied him a YOPH in violation of the Fourteenth Amendment's due process guarantees, and (2) his sentence is grossly disproportionate to his culpability in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  See ECF No. 13 at 3, 5.  On December 13, 2021, Respondent filed a motion to dismiss arguing that one claim is based on state law, the other claim is not cognizable, and that both claims were not exhausted.  See ECF No. 12 at 7.  Respondent also alleged that some of Petitioner's claims identified in the petition were untimely.  Id.  However, Petitioner clarified he is not asserting those claims alleged to be untimely, thereby eliminating the need to evaluate the untimeliness affirmative defense.  See id. at 3.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3rd. Cir.2001) (reviewing petition de

novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring, garnering a majority of the Court)). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 125(2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, the United States Supreme Court explained these different

1    standards. 529 U.S. at 405-406. A state court decision is "contrary to" Supreme Court precedent
2    if it is opposite to that reached by the Supreme Court on the same question of law, or if the state
3    court decides the case differently than the Supreme Court has on a set of materially
4    indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law
5    if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id.
6    In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary
7    outcome because the state court applied the wrong legal rules. Thus, a state court decision
8    applying the correct legal rule from Supreme Court cases to the facts of a particular case is not
9    reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary
10   to" clearly established law, it is reviewed to determine first whether it resulted in constitutional
11   error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is
12   whether such error was structural, in which case federal habeas relief is warranted. See id. If the
13   error was not structural, the final question is whether the error had a substantial and injurious
14   effect on the verdict, or was harmless. See id.

15   State court decisions are reviewed under the far more deferential "unreasonable
16   application of" standard where it identifies the correct legal rule from Supreme Court cases, but
17   unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S.
18   510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested
19   that federal habeas relief may be available under this standard where the state court either
20   unreasonably extends a legal principle to a new context where it should not apply, or
21   unreasonably refuses to extend that principle to a new context where it should apply. See
22   Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court
23   decision is not an "unreasonable application of" controlling law simply because it is an erroneous
24   or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. at
25   75-76. An "unreasonable application of" controlling law cannot necessarily be found even where
26   the federal habeas court concludes that the state court decision is clearly erroneous. See id. This
27   is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating
28   error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which

6

are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

This case proceeds on two claims: (1) that the California Supreme Court improperly denied Petitioner a YOPH in violation of the Fourteenth Amendment's due process guarantees, and (2) that his sentence is grossly disproportionate to his culpability in violation of the Eighth Amendments prohibition on cruel and unusual punishment. See ECF No. 13 at 3, 5.

**A.  Lack of Federal Habeas Jurisdiction**

**1.  Claim Based on State Law**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."

Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

In this case, Petitioner argues that the California Superior Court's denial of his habeas claims are contrary to, and result from an unreasonable determination of, clearly established law as promulgated by the U.S. Supreme Court. See ECF No. 13 at 5. Petitioner argues that his claim has federal habeas jurisdiction because "the [California] youth offender parole law is the result of two key U.S. Supreme Court decisions." Id. at 17. Petitioner characterizes the U.S. Supreme Court cases Miller v. Alabama, 567 U.S. 460 (2012), and Graham v. Florida, 560 U.S. 48 (2010), as creating the right for youth offenders to obtain release upon a showing of maturity and rehabilitation. See id. at 18-19. He then concludes that because the youth offender parole scheme "originated in the U.S. Supreme Court prior to becoming state law," he states a valid federal habeas claim. Id. at 20.

Petitioner's argument fails because Miller and Graham do not create a federal right to a youth offender parole hearing. The Miller court characterized Graham as concluding that "the Eighth Amendment prohibits a sentence of life without the possibility of parole for a juvenile convicted of a nonhomicide offense" and likened life without parole for juveniles to the death penalty. Miller, 567 U.S. 460 at 461 (emphasis added). In Miller, the Supreme Court evaluated Arkansas' sentencing scheme that mandated life in prison without the possibility of parole for juvenile homicide offenders. Id. at 480. The Miller court struck down the sentencing scheme because "[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." Id. While both cases emphasize the need to take the age of defendants into consideration during sentencing, neither mandate that states provide youth offender parole hearings. Additionally, both cases involve the sentence of life without parole, whereas Petitioner has the opportunity for parole. Therefore, Petitioner's claim that he was improperly denied a YOPH is not based on a

transgression of federal law binding on the state courts, but rather based solely on California statutes and caselaw related to California Penal Code § 3051.  See Middleton, 768 F.2d at 1085.  Because this claim alleges an error in the interpretation or application of state law, Petitioner is not entitled to federal habeas jurisdiction.  See id.

### 2. Speedier Release

Any claim that does not necessarily shorten an inmate's incarceration, if successful, falls outside the scope of habeas jurisdiction.  See Blair v. Martel, 645 F.3d 1151, 1157-58 (9th Cir. 2011).  The Ninth Circuit articulated that habeas relief is only available if success on the merits of a petitioner's challenged disciplinary proceeding would necessarily impact the fact or duration of his confinement.  Nettles v. Grounds, 830 F.3d. 922, 934-35 (9th Cir. 2016) (en banc) (emphasis original).  Such claims that are outside the scope of habeas jurisdiction must be brought, if at all, in a § 1983 civil rights complaint.  Blair, 645 F.3d at 1157-58.  If successful here, Petitioner claims that he was denied a YOPH would only result in the holding of a YOPH.  There is no guarantee of how the hearing would be resolved or if it would impact the fact or duration of Petitioner's confinement at all.  Because success on Petitioner's claim would result only in the speedier consideration of his youth offender status, Petitioner is not entitled to habeas relief.  Nettles, 830 F.3d at 934-35.

### B. Unexhausted

Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required before claims can be granted by the federal court in a habeas corpus case.  See Rose v. Lundy, 455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir. 2003).[1]  The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations.  See Picard v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.  "A petitioner may satisfy the exhaustion requirement in two ways: (1) by providing the highest state court with an opportunity to rule on the merits of the claim . . .; or (2) by showing that at the

---

[1] Claims may be denied on the merits notwithstanding lack of exhaustion.  See 28 U.S.C. § 2254(b)(2).

9

time the petitioner filed the habeas petition in federal court no state remedies are available to the petitioner and the petitioner has not deliberately by-passed the state remedies." Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).  Exhaustion is not a jurisdictional requirement, and the court may raise the issue sua sponte. See Simmons v. Blodgett, 110 F.3d 39, 41 (9th Cir. 1997).

Regardless of whether the claim was raised on direct appeal or in a post-conviction proceeding, the exhaustion doctrine requires that each claim be fairly presented to the state's highest court. See Castille v. Peoples, 489 U.S. 346 (1989). Although the exhaustion doctrine requires only the presentation of each federal claim to the highest state court, the claims must be presented in a posture that is acceptable under state procedural rules. See Sweet v. Cupp, 640 F.2d 233 (9th Cir. 1981).  Thus, an appeal or petition for post-conviction relief that is denied by the state courts on procedural grounds, where other state remedies are still available, does not exhaust the petitioner's state remedies. See Pitchess v. Davis, 421 U.S. 482, 488 (1979); Sweet, 640 F.2d at 237-89.[2]

In this case, Petitioner's writ was denied by the California Supreme Court citing to People v. Duvall, 9 Cal.4th 464, 474 (1995) because a petition for writ of habeas corpus must include copies of reasonably available documentary evidence. ECF No. 1 at 74.  The Ninth Circuit has interpreted the California Supreme Court's denial of a habeas claim with a citation to Duvall as denying the claim on procedural grounds. See Gaston v. Palmer, 417 F.3d 1030, 1039 (9th Cir. 2005).  Therefore, because Petitioner's claims are unexhausted, he is not entitled to relief from the federal courts at this time. See Rose, 455 U.S. at 518; see also Kelly, 315 F.3d at 1066; Hunt, 336 F.3d at 839.

**C. Cruel and Unusual Punishment**

In Lockyer v. Andrade, the Supreme Court concluded that habeas relief was not available on a claim that two consecutive sentences of 25 years to life in prison constituted cruel

---

[2] This situation of procedural deficiency is distinguishable from a case presented to the state court using proper procedures but where relief on the merits is precluded for some procedural reason, such as untimeliness or failure to raise the claim on direct appeal.  The former represents an exhaustion problem; the latter represents a procedural default problem.

and unusual punishment because there is no clearly established Supreme Court precedent. See 538 U.S. at 72. The Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. . . . [¶] Thus . . . the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme" case.

Id. at 72-73.

In Rummel v. Estelle, the Supreme Court upheld an indeterminate life sentence where the defendant had obtained $125.70 by false pretenses and had two prior serious felony convictions. See 455 U.S. 263, 285 (1980). In Harmelin v. Michigan, the Court upheld an indeterminate life sentence where the defendant possessed 650 grams of cocaine. See 501 U.S. 957, 1009, (1983). In Ewing v. California, the Court rejected an Eighth Amendment argument where the defendant had been sentenced to 25 years to life for grand theft with prior serious felony convictions. See 538 U.S. at 30-31. Because the Supreme Court has upheld sentences similar to Petitioner's, the state court's decision was not "contrary to" or represent an "unreasonable application of" clearly established law as required by § 2254(d)(1).

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 19, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE